IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTINE BRENNER,<br>      Plaintiff<br><br>v.<br><br>TOWN OF MIDDLETOWN, and<br>WILLIAM TEXTER, in his individual and<br>official capacity as Chief of Middletown<br>Police<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 23-0171-JLH-SRF<br>)<br>)<br>)<br>)<br>)<br>) |

Michele D. Allen, ALLEN & ASSOCIATES, Wilmington, DE.

    Attorney for Plaintiff.

Scott G. Wilcox, GIORDANO, DELCOLLO, WERB & GAGNE, LLC, Wilmington, DE.

    Attorney for Defendants.

**MEMORANDUM OPINION**

November 22, 2024
Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE:**

In this case, Plaintiff, Christine Brenner ("Brenner"), asserts claims against Defendants, Town of Middletown ("Middletown") and William Texter ("Texter") (collectively, "Defendants") for gender discrimination, sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII") and the Delaware Discrimination in Employment Act ("DDEA"). 19 *Del. C.* § 711, *et. seq.* Plaintiff also claims a violation of the Delaware Whistleblower Protection Act, ("DWPA"). 19 *Del. C.* § 1702.

Presently before the court is a motion to dismiss Plaintiff's first amended complaint ("FAC") (D.I. 7) for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 9)[1] For the reasons that follow, the court **DENIES** Defendants' motion to dismiss.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367. On February 7, 2024, the parties consented to have the undersigned Magistrate Judge resolve this motion to dismiss and enter a final order upon its disposition. (D.I. 18) The motion is fully briefed and ripe for review.

## II. BACKGROUND[2]

Plaintiff began her employment with the Middletown Police Department in 2007 and currently holds the position of Senior Lieutenant. (D.I. 7 at ¶ 2) Defendant Middletown is a

---

[1] The briefing submitted for this motion can be found at D.I. 10, D.I. 11, and D.I. 15.
[2] The facts in this section are based upon the FAC (D.I. 7), which the court views in the light most favorable to the Plaintiff on a motion to dismiss. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016).

2

municipal corporation of New Castle County, Delaware. (*Id.* at ¶ 13) Defendant Texter is the current Police Chief of the Middletown Police Department, having formerly served as the Department's Captain. He is sued in his individual and official capacities. (*Id.* at ¶¶ 14, 80)

At the time of her hire, Plaintiff was one of two female employees in the Middletown Police Department. (*Id.* at ¶ 24) In or around March of 2019, Robert Kracyla ("Kracyla")[3] was promoted to Middletown's Chief of Police, the highest-ranking position in the Department. (*Id.* at ¶ 29)

Plaintiff alleges that from the time Kracyla became Chief, he engaged in discriminatory and harassing behavior towards Plaintiff, based on her gender. (*Id.* at ¶¶ 30–47) Plaintiff alleges Kracyla's discriminatory conduct created a hostile work environment for Plaintiff and the other female officer. (*Id.* at ¶ 32)

Plaintiff claims that she reported her concerns and specific instances of Kracyla's discriminatory conduct to Defendant Texter, who was the Department's Captain and Plaintiff's direct supervisor at the time. (*Id.* at ¶ 65) Plaintiff alleges Defendant Texter took no action on her complaints. (*Id.* at ¶ 66) As a result of Defendant Texter's inaction, Plaintiff reported her concerns to Mayor Branner, with written and recorded evidence of Kracyla's alleged misapplication of grant funds allegedly earmarked for training officers, misuse of overtime, gender discrimination, creation of a hostile work environment, and retaliation against her. (*Id.* at ¶ 68) Plaintiff participated in the investigation of Kracyla's alleged misconduct, but claims she was not provided with the results. (*Id.* at ¶¶ 69–70) Plaintiff alleges Kracyla was not discharged

---

[3] Kracyla is not named as a Defendant in this lawsuit.

or disciplined but was permitted to resign in March of 2021 and collected all of his earned leave time. (*Id.* at ¶ 71)[4]

Plaintiff applied for the Chief of Police position in March of 2021, but Defendant Texter was selected. (*Id.* at ¶¶ 73, 75, 79–80) Plaintiff alleges that despite being qualified, she was not selected as Chief in retaliation for reporting her gender discrimination claims and Kracyla's alleged misconduct. (*Id.* at ¶¶ 77–80, 86–87) Furthermore, Plaintiff contends that Defendant Texter continued the discriminatory and hostile work environment that she experienced during Kracyla's term as Chief of Police. (*Id.* at ¶ 88)

Plaintiff alleges that due to the continually hostile work environment, she has suffered from multiple panic attacks, anxiety, and high blood pressure. (*Id.* at ¶¶ 124–25) As a result, Plaintiff has taken several sick days and leave under the Family Medical Leave Act ("FMLA") to seek treatment. (*Id.* at ¶ 126)

Plaintiff filed an initial charge of discrimination with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"), on December 28, 2021, alleging gender discrimination and retaliation against Defendant Middletown. (*Id.* at ¶ 15) Plaintiff received a final determination and notice of right to sue from the DDOL an EEOC on June 27, 2022 and November 17, 2022, respectively. (*Id.* at ¶¶ 16–17) Plaintiff filed this action on February 15, 2023, within 90-days of receiving the EEOC's notice of right to sue. (*Id.* at ¶ 18) On February 14, 2023, Plaintiff filed a second charge of discrimination with the DDOL and the EEOC alleging further claims of gender discrimination and retaliation against Defendant Middletown. (*Id.* at ¶ 19) Plaintiff received a final determination and notice of right to sue from

---

[4] Defendants dispute Kracyla's resignation date and have argued that he resigned on December 31, 2020. (D.I. 10 at 2)

the DDOL and EEOC on April 12, 2023, and May 22, 2023, respectively, for the second charge. (*Id.* at ¶¶ 20–21) The operative FAC was filed on June 22, 2023, within 90-days of receiving the notices. (D.I. 7)

Plaintiff alleges after she filed her initial charge of discrimination with the DDOL and the EEOC, she and the other female Lieutenant were reassigned all of the current Captain's administrative duties, in retaliation. (*Id.* at ¶ 115) Plaintiff alleges she was not compensated for these additional duties, but male officers were compensated in similar circumstances for their additional duties. (*Id.* at ¶ 118)

The FAC alleges the following counts: Gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and the DDEA, 19 *Del. C.* § 711, *et. seq.*, in Counts I and II; (D.I. 7 at ¶¶ 127–63) Violations of the DWPA, 19 *Del. C.* § 1702 in Count III; (*Id.* at ¶¶ 164–78) and Hostile Work Environment, in violation of 42 U.S.C § 1983 in Count IV. (*Id.* at ¶¶ 179–98) Counts I through III are asserted against Defendant Middletown, Count IV is asserted against both Defendants. (*See id.*)

### III. LEGAL STANDARD

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To state a claim pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In assessing the plausibility of a claim, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

## IV.   DISCUSSION

Defendants present three arguments in favor of dismissal.  First, Defendants argue that Plaintiff's gender discrimination, hostile work environment, and retaliation claims are time-barred.  Second, Defendants argue that Plaintiff failed to exhaust her administrative remedies with respect to her second claim of discrimination filed with the EEOC on February 14, 2023.  Third, Defendants argue that Plaintiff failed to plead sufficient facts to state a violation under the DWPA.

### A. Plaintiff Timely Filed Her Discrimination, Retaliation, and Hostile Work Environment Claims - Counts I, II, and IV

Defendants argue that Plaintiff failed to timely file her gender discrimination, retaliation, and hostile work environment claims with the EEOC. Under Title VII of the Civil Rights Act of 1964, a Plaintiff "shall" file a charge of employment discrimination with the EEOC either 180 or 300-days after an "alleged unlawful employment practice occurred." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)). In this case, it is undisputed by the parties that the applicable limitations period to file a charge under Title VII is 300-days after the occurrence, 42 U.S.C. § 2000e–5(e)(1).[5] Otherwise, the aggrieved employee is barred from pursuing such claims in court. (*Id.*) Defendants argue Plaintiff's first charge of discrimination was filed beyond the 300-day limitation period and is time-barred. (D.I. 10 at 3)

Defendants contend that former Chief Kracyla's last day of work was December 31, 2020. Therefore, according to Defendants, Plaintiff had until September 21, 2021, to file a discrimination charge with the EEOC and DDOL to avoid being time-barred. (D.I. 10 at 7–8) Defendants move to dismiss Counts I, II, and IV as untimely. (*Id.*)

Without addressing the substantive Title VII allegations in the FAC, Defendants premise their untimeliness argument exclusively on the date range between Kracyla's resignation as

---

[5] "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency." 42 U.S.C. § 2000e–5(e)(1).

7

Police Chief and the date Plaintiff filed her charge of discrimination with the EEOC. (D.I. 10 at 3–4) Plaintiff pled in her FAC that Kracyla did not resign until "March of 2021." (D.I. 7 at ¶ 71) Relying on an unverified exhibit outside of the pleadings, Defendants contend that Kracyla's resignation was actually on December 31, 2020, therefore, Plaintiff had until September 21, 2021, to file a charge of discrimination with the EEOC and DDOL. (D.I. 10 at 7–8) Because Plaintiff did not file her charge until December 28, 2021, Defendants argue it is time-barred. (*Id.*)

In resolving a motion to dismiss, the court may not consider an unverified document outside of the pleadings that contradicts an alleged fact contained in the operative FAC. However, the court may consider the complaint and documents referenced in or attached to the complaint. *See In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.' *PBGC v. White Consol. Indus.*, 988 F.2d 1192, 1196 (3d Cir. 1993)."). Defendants fail to provide any authority which would allow the court to consider the unverified exhibit attached to their opening brief.[6]

Plaintiff argues that the FAC plausibly alleges a continuing violation, thus, her claims are not time-barred because the entirety of the hostile work environment prior to the 300-day limitations period may be considered part of the claim. (D.I. 11 at 7–8) Defendants contend for

---

[6] Defendants attach Exhibit A, D.I. 10-1, to their opening brief. The exhibit appears to be Council Minutes from a January 4, 2021, town meeting. However, the Defendants provide no declaration authenticating the document nor is it mentioned in the FAC. *See Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D. N.J. 2019) (citing *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016)).

8

the first time in their reply brief that Plaintiff's claims of discrimination are discrete violations and "[u]ltimately, when the Amended Complaint is reviewed in total, the claims made by Plaintiff are random, unrelated acts which do not show a continuing violation." (D.I. 15 at 3)

The seminal case of *Nat'l R.R. Passenger Corp. v. Morgan* provides guidance for determining the applicable limitations period in Title VII cases. Pursuant to *Morgan*, the Plaintiff has up to 300-days *after* the last unlawful employment practice to file a charge with the EEOC. *Id.* at 101. If the unlawful employment practices involve discrete acts, then each discrete discriminatory act starts a "new clock" for filing charges alleging that act. *Id.* at 102. Examples of discrete acts include: "termination, failure to promote, denial of transfer, or refusal to hire. . ." *Id.* at 115.

"Unlawful employment practices" also include hostile work environment claims. *Id.* at 118. Such claims are different from discrete acts because, by their very nature, a hostile work environment claim involves repeated conduct which occurs over a series of days, or even years. *Id.* at 103. In determining whether an actionable hostile work environment claim exists, the court must view "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 103 (citation omitted). The entire time period of the hostile work environment may be considered by a court for purposes of determining liability, provided that an act contributing to the claim occurred within the statutory filing period. *Id.* at 117. In other words, for the charge to be timely, the Plaintiff need only file a charge within 300-days of any act that is part of the hostile work environment claim. *Id.* at 118.

Based on *Morgan*'s framework, Plaintiff's FAC plausibly alleges gender discrimination, retaliation, and a hostile work environment in the Middletown Police Department that has persisted under two consecutive Chiefs, Kracyla and Texter since March of 2019. First, Plaintiff's FAC plausibly alleges the hostile work environment as it persisted under Kracyla from the time he became Chief of Police in March of 2019. (D.I. 7 at ¶¶ 30–47) Plaintiff avers that despite complaining about Kracyla's conduct to Defendant Texter and Mayor Branner, no action was taken for months. (*Id.* at ¶¶ 65–70) The FAC alleges that Kracyla's resignation in March of 2021 did not eliminate Plaintiff's exposure to a hostile work environment which continued after Texter was promoted to Chief of Police and prompted the filing of Plaintiff's first charge of discrimination with the EEOC and DDOL on December 28, 2021. (*Id.* at ¶¶ 88, 95)

Plaintiff alleges that after Defendant Texter became Chief of Police, the Captain position was filled by a male, who was junior to Plaintiff and the other female Lieutenant. (*Id.* at ¶ 91) Plaintiff further alleges the female officers were told that if they applied for the position of Captain and were appointed, they would be required to maintain their current job duties and responsibilities as well as the Captain's job duties and responsibilities, however the male who was appointed as the new Captain did not have to keep his former responsibilities. (*Id.* at ¶¶ 90, 94) Plaintiff alleges that in order to receive time off from work, Defendant Texter required her to submit a memo in advance. (*Id.* at ¶ 105) Plaintiff alleges no male officers were required to submit a memo in order to obtain approval for time off. (*Id.* at ¶ 106) Plaintiff further alleges Defendant Texter would routinely deny female officers training opportunities which hindered career advancement. (Id. at ¶ 110) The ongoing hostile work environment allegedly prompted the Plaintiff to file her second charge of discrimination on February 14, 2023.

Following *Morgan*, the Third Circuit has held that separate acts can be aggregated as a continuing violation if they all fall within the same ongoing pattern of an unlawful employment practice. *See Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165–66 (3rd Cir. 2013) (holding the continuing violation doctrine will aggregate claims that are individually actionable so long as they are linked in a pattern of actions which continues into the applicable limitations period.)

Defendants argue, without citation to authority, that the Plaintiff's allegations of discriminatory conduct, are discrete acts that must be dismissed as time-barred. Thus, Defendants ask the court to essentially engage in fact-finding to determine whether the Plaintiff has alleged discreet acts or an ongoing hostile work environment. The court cannot resolve such disputes on a motion to dismiss. Whether the Plaintiff's discrimination claims are discrete acts or are part of a continuing violation can only be made upon a fully developed factual record following discovery.

At the motion to dismiss stage, the allegations set forth in the FAC prevail. The court must accept the facts plausibly alleged in the FAC, even if actual proof of those facts is improbable, and recovery is remote or unlikely. *Twombly*, 550 U.S. at 557.

Accordingly, Defendants' motion to dismiss Plaintiff's Title VII claims in Counts I, II, and IV as time-barred is **DENIED** without prejudice.

### B. Plaintiff's Notice of Right to Sue Issued Less Than 180-Days After Filing Her Second Charge of Discrimination with the EEOC Is Not Premature

Pursuant to 42 U.S.C. § 2000e–5(f)(1), the EEOC shall issue a notice of right to sue to an aggrieved party if the charge of discrimination filed with the EEOC is dismissed or 180-days have elapsed without the EEOC filing a civil action or entering into a conciliation agreement. Once the notice issues, the aggrieved party has 90-days to file suit against the party named in the charge. 42 U.S.C. § 2000e–5(f)(1).

Defendants argue for dismissal of the Plaintiff's Title VII claims which are the subject of her second charge of discrimination, on the basis that the Plaintiff improperly bypassed the process for obtaining her right to sue notice from the EEOC before the statutory 180-day period ended. Without citing to any authority, Defendants argue in their opening brief that the prematurely issued notice is against public policy and violates the requirement that the Plaintiff exhaust administrative remedies before pursuing her claims in litigation. (D.I. 10 at 9) Furthermore, Defendants contend that if the FAC is allowed to proceed, the Plaintiff would be permitted to "circumvent the law when it benefitted [her]." (*Id.*)

In their briefing on this argument, both sides have taken a detour beyond the scope of the pending motion to dismiss. Both sides argue that the Plaintiff requested an early right to sue notice from the EEOC for Plaintiff's second charge of discrimination yet both sides fail to provide the court with a citation as to where it exists in the record. Both sides further argue the purported reasons the Plaintiff requested an early right to sue notice but neither side cites any support in the record.

For purposes of the pending motion, the record before the court consists of the FAC and the right to sue notices the Plaintiff received from the EEOC and the DDOL. With respect to her second charge of discrimination, the record demonstrates that it was filed on February 14, 2023. (D.I. 7 at ¶ 19) The original complaint in this litigation was filed the next day, on February 15, 2023. (*See id.*) The EEOC issued a right to sue notice on May 22, 2023 for the second charge. (D.I. 7 at ¶¶ 20–21; D.I. 7-5) The notice stated:

> Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you

12

have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

(D.I. 7-5)

The notice was signed by Assistant Attorney General, Kristen Clarke, of the U.S. Department of Justice Civil Rights Division. (*Id.*) The FAC was filed on June 22, 2023, within the 90-day period permitted by the statute. (D.I. 7)

Plaintiff correctly asserts that the regulation addressing right to sue notices allows for the issuance of the notice prior to the expiration of the 180-day statutory period. 29 C.F.R. § 1601.28(a)(2). Plaintiff argues that she met the requirements of the regulation which authorizes the Commissioner, in response to a request from the employee, to issue a right to sue notice prior to the expiration of the 180-days. (D.I. 11 at 12)

In their reply brief, Defendants argue, for the first time, that issuance of an "early" right to sue notice is prohibited under 29 C.F.R. §1601.28(a)(2) against a governmental entity prior to the expiration of 180-days. (D.I. 15 at 3–4) Because this issue was not raised until the reply brief, the matter is considered waived. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief"). Defendants then assert, without reference to any case law, that even if a charging party was issued a right to sue letter, in advance of an EEOC or DDOL investigation, "…this does not provide a charging party the right to withdraw its claims because the matter is in litigation and seek a right to sue letter so she can belatedly include[e] the claims in her civil lawsuit." (D.I. 15 at 6)

Even if Defendants' argument was not waived, the court finds it unavailing. In this case, Plaintiff requested an early right to sue notice pursuant to the general right under 29 C.F.R. § 1601.28(a)(2). The subsection carves out government entities in 29 C.F.R. § 1601.28(a)(2).

13

But government entities are specifically addressed in 29 C.F.R. § 1601.28(d)(1)–(2). Defendants' reply brief omits any discussion of the subsection of the regulation which is directly applicable to government respondents such as the Town of Middletown. The regulation provides in relevant part as follows:

> **(d)** *Notices of right to sue for charges against Governmental respondents.* In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue the notice of right to sue when there has been a dismissal of a charge…. In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue, including the following cases:
>
>> (1) When there has been a finding of reasonable cause by the Commission, there has been a failure of conciliation, and the Attorney General has decided not to file a civil action; and
>>
>> (2) Where a charging party has requested a notice of right to sue pursuant to § 1601.28(a)(1) or (2). In cases where a charge of discrimination results in a finding of cause in part and no cause in part, the case will be treated as a "cause" determination and will be referred to the Attorney General.

29 C.F.R. § 1601.28(d)(1)–(2) (emphasis in original).

Thus, the regulation on its face does not prohibit the issuance of an early right to sue notice pursuant to Section 1601.28(a)(2) against a governmental respondent.

For purposes of the pending motion, the Plaintiff has sufficiently demonstrated compliance with the requirements of the regulation, Section 1601.28 (d)(1) and (2), for obtaining an early right to sue notice. Furthermore, the Plaintiff provides supporting authority from this District allowing a Plaintiff to litigate discrimination claims following the issuance of an early right to sue notice regardless of uncertainty about the validity of the regulation. *See Smith v. Del. State Hous. Auth.*, C.A. No. 16-1051-RGA, 2017 LEXIS 20463 (D. Del. Feb. 14, 2017). The decision in *Smith* followed the reasoning of the District of New Jersey in *Lemke*. *Lemke v. Int'l Total Servs., Inc.*, 56 F. Supp. 2d 472, 481–82 (D.N.J. 1999), *aff'd without opin.*, 225 F.3d 649 (3d Cir. 2000) (holding that to rule against plaintiff for relying upon an early right to sue letter

"would not be equitable"). Even though *Lemke* was decided at the summary judgment stage, its thorough analysis of the questionable validity of the regulation concerning the issuance of an early right to sue notice informs the court's decision to deny the motion to dismiss in the instant case.

In *Lemke*, the plaintiff requested, and was issued, an early right to sue notice because she wanted to quickly file suit on her discrimination claims. *Id.* at 478. The court noted that the validity of the regulation permitting the early right to sue notice has been "hotly debated in the courts" and cited to the collection of authorities. *Id.* at 478–79. *Lemke* points out that only two Circuit decisions have directly decided the issue, and both concluded that the regulation is entitled to deference "because it makes little sense that a claimant must sit idly by for 180-days when the EEOC has certified that it is unable to investigate the charge within the prescribed time." *Id.* at 479.

Although the *Lemke* court leaned towards disapproval of the regulation which contravenes the statutory 180-day period, it noted that the issue had not yet been determined by the Third Circuit. *Id.* at 479–80. Moreover, the Third Circuit and other courts are bound by the Supreme Court's decision in *Zipes* which establishes that the 180-day exhaustion period is not jurisdictional and, therefore, is subject to equitable considerations. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Consequently, the court found even if the plaintiff had deliberately bypassed the administrative procedures of Title VII, she did what the regulation allowed her to do, so the court found that making her wait or return to the EEOC for further process "would serve no useful purpose." *Lemke*, 56 F. Supp. 2d at 482.

The court finds the rationale of *Lemke* persuasive. Therefore, even if Defendants' belated arguments in its reply brief challenging the validity and application of the regulation are

considered, the court finds, at this stage of the proceedings, that the Plaintiff did what the regulation permitted her to do and to rule otherwise would be inequitable.

Accordingly, the Defendants' motion to dismiss Plaintiff's Title VII claims in Counts I, II, and IV for failing to exhaust administrative remedies is **DENIED** without prejudice.

### C. Plaintiff Plausibly Pleads a Claim Under the DWPA – Count III

The DWPA protects employees who are fired for reporting violations of certain state and federal laws. *Pratt v. M&T Bank Corp.*, 230 F. Supp. 3d 343, 346 (D. Del. 2017) (citing *Smith v. Del. State Univ.*, 47 A.3d 472, 476 (Del. 2012)). Both parties agree that to state a claim under the DWPA, the Plaintiff must allege: "(1) [she] engaged in a protected whistleblowing activity; (2) the accused official knew of the protected activity; (3) [Plaintiff] suffered an adverse employment action; and (4) there is a causal connection between the whistleblowing activity and the adverse action." *Doe v. New Castle County*, C.A. No. 21-1450-RGA, 2022 WL 1909394, at *6 (D. Del. Jun. 3, 2022) (quoting *Chance v. Kraft Heinz Foods Co.*, 2018 WL 6655670, at *10 (Del. Super. Ct. Dec. 17, 2018)).

Section 1703 of the DWPA provides that: "[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee . . . [b]ecause the employee . . . reports or is about to report . . . verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur[.]" 19 *Del. C.* § 1703(1). The statute defines a "violation" narrowly, as an act or omission by the employer that is:

> [m]aterially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere[.]

19 *Del. C.* § 1702(6)(a).

Defendants do not dispute that prong one of the DWPA is satisfied based upon Plaintiff's allegations in the FAC that she engaged in protected activity when she reported Kracyla's misapplication of grant funds and overtime to the Defendants. (D.I. 7 at ¶¶ 167–69) Instead, Defendants devote one paragraph in their opening brief to their conclusory argument that Plaintiff fails to satisfy prongs two, three, and four of the DWPA. (D.I. 10 at 11)

Plaintiff responds that her allegations satisfy all prongs of the DWPA because she reported Kracyla's alleged financial misdeeds to both Defendants, participated in the investigation against him, and was denied a promotion to Chief of Police because she engaged in the foregoing activities. (D.I. 11 at 15–17)

As to prong two, the court finds that the FAC contains sufficient allegations that Defendants knew of the protected activity because it was reported to them. (D.I. 7 at ¶¶ 169) For example, Plaintiff asserts that she questioned and raised the issue of payment of overtime to Kracyla with Defendant Texter. (*Id.* at ¶ 168) Plaintiff states she further raised the issue of overtime and misapplication of grant funds to the Mayor, with both written and recorded evidence, which triggered the investigation of Kracyla. (*Id.* at ¶¶ 67–70)

Defendants argue in their reply brief that they did not have knowledge under prong two because: "[p]laintiff does not cite any law, rule or regulation that supports her belief that Chief Kracyla was not entitled to overtime." (D.I. 15 at 8) However, at this stage of the proceedings, it is sufficient for Plaintiff to plead reported conduct that the Plaintiff, "reasonably believed to be a violation of law, even if [s]he did not plead facts showing which law [s]he believed [the defendant's] misconduct violated." *Jones v. Navient*, 2022 WL 2063308, at *2 (Del. Super. Ct. May 25, 2022). A plaintiff only needs to plead facts to show that she reported conduct that she *reasonably believed* violated a law. *Id.* (emphasis added).

17

As to prong three, the FAC plausibly alleges that Plaintiff suffered an adverse employment action when she was not promoted to Chief of Police. (D.I. 7 at ¶¶ 174–75)

Finally, the FAC plausibly pleads the fourth prong, that there is a causal connection between the whistleblowing activity and the adverse action. Plaintiff's FAC alleges sufficient facts that demonstrate a causal connection between the reporting of Kracyla's alleged financial misdeeds that led to his resignation, and the denial of Plaintiff's promotion to the Chief of Police position. (*Id.* at ¶¶ 167, 174) Moreover, there is sufficient temporal proximity between Plaintiff's report of Kracyla's alleged misconduct and her participation in the investigation of it in December of 2020 and the denial of Plaintiff's promotion to Chief of Police in March of 2021. (*Id.* at ¶¶ 69–71, 79–80, 175)

To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if the adverse action and the report were unusually close in proximity. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (citations omitted); *see also Thomas v. Del. State Univ.*, C.A. No. 10-522-GMS, 2014 WL 5020275, at *7 (D. Del. Oct. 6, 2014) (explaining that "timing is a critical factor in assessing causation" under the DWPA); *see also Jones*, 2022 WL 2063308, at *2 (finding at the motion to dismiss stage that six months of temporality was sufficient to infer the "primary basis" for defendant's actions were plaintiff's whistleblower activities).

Defendants argue in their reply brief that the causation prong under the DWPA is not satisfied for no other reason than the Plaintiff was not qualified for the position. (D.I. 15 at 10) But such an argument amounts to a factual challenge of the allegations in the FAC, which cannot be considered at the motion to dismiss stage. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1424–25 (when ruling on a motion to dismiss, a district court is "not permitted to go

beyond the facts alleged in the complaint and the documents on which the claims made therein were based").

Accordingly, the Defendants' motion to dismiss Plaintiff's DWPA claim at Count III, is **DENIED** without prejudice.

## V. CONCLUSION

For these reasons, the court **DENIES** Defendants' motion to dismiss. An Order consistent with this Opinion shall issue.